IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ◊ | |
| | ◊ | |
| Plaintiff, | ◊ | |
| | ◊ | |
| vs. | ◊ | Cv. No. 11-1091-JDB/egb |
| | ◊ | Cr. No. 08-10118-JDB |
| JEFFERY J. SMITH, | ◊ | |
| | ◊ | |
| Defendant. | ◊ | |
| | ◊ | |

ORDER DENYING MOTION TO AMEND,
(DOCKET ENTRY 27)
DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
ORDER OF DISMISSAL,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

On April 14, 2011, Defendant, Jeffery J. Smith, Bureau of Prisons registration number 22535-076, an inmate at the Federal Correctional Institution in Yazoo City, Mississippi, filed a *pro se* motion under 28 U.S.C. § 2255. (Docket Entry ("D.E.") 1.) On July 25, 2012, the Court directed the United States to respond to the motion which it submitted on December 31, 2013. (D.E. 4, 26.) On January 17, 2014, Defendant filed a traverse seeking to supplement and amend the motion to vacate. (D.E. 27.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) (codified, *inter alia*, at 28 U.S.C. § 2244 *et seq.*) ("AEDPA") amended 28 U.S.C. §§ 2244(b) and 2255 to limit a defendant to his direct appeal and one collateral attack, filed within one year of the date his conviction is final. Because this motion was filed after April 24, 1996, the AEDPA is applicable. *See* Lindh v. Murphy, 521 U.S. 320, 336 (1997). Paragraph (f) of 28 U.S.C. § 2255 provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

"As a general matter, a conviction becomes final for purposes of collateral attack at the conclusion of direct review." United States v. Cottage, 307 F.3d 494, 498 (6th Cir. 2002). Because Smith did not take a direct appeal, his judgment of conviction became final on April 28, 2010, fourteen days after the entry of judgment. See Fed. R. App. P. 4(b)(1)(A) (2009). The running of the § 2255 statute of limitations commenced on that date, and it expired one year later, on April 28, 2011.

The mandate of Fed. R. Civ. P. 15(a), that a court freely grant leave to amend when justice so requires, has been interpreted to allow supplementation and clarification of claims initially raised in a timely § 2255 motion. See Anderson v. United States, 39 F. App'x 132, 136 (6th Cir. 2002); Oleson v. United States, 27 F. App'x 566 (6th Cir. 2001). The time to amend to raise additional claims expired in 2011. To the extent Defendant's traverse filed on January 17, 2014, raises additional claims, those assertions are time barred.

Once the statute of limitations has expired, allowing amendment of a petition to allege additional grounds for relief would defeat the purpose of the AEDPA. Oleson, 27 F. App'x at 571 (citing United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000) ("[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.")). Smith's traverse supplements his contention that counsel failed to advise him of the effect of any applicable enhancements on the length of his sentence or his potential statutory sentence before he entered his guilty plea. (D.E. 27 at 2.) The Court will consider the supplemented claims in its determination.

The traverse also seeks to amend the motion to vacate to raise new claims: counsel failed to file a notice of appeal as requested and Smith's entitlement to relief under the Fair Sentencing Act. The new claims are barred by the AEDPA statute of limitations. (D.E. 27 at 5-15.) The motion to amend is DENIED.

On October 20, 2008, a federal grand jury returned a two-count indictment against Smith and five co-defendants. (Criminal Docket Entry ("Cr. D.E.") 1.) He was charged in Count One with conspiracy to possess with intent to distribute and distribution of over 50 grams of cocaine base (crack cocaine), in violation of 18 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. (Id.) In Count Two, Smith was charged with aiding and abetting in the same activity as in Count One, in violation of 18 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Id.) On June 26, 2009, Defendant pled guilty to Count One pursuant to a written plea agreement, which provided as follows:

> Come now the parties herein, the Defendant, JEFFREY SMITH, being represented by counsel, STEVE WEST, and the United States being represented by JERRY R. KITCHEN, Assistant United States Attorney for the Western District of Tennessee and hereby agree as follows:
>
> 1. The following plea agreement constitutes the entire agreement between the parties and the parties agree that any issues not specifically addressed by this plea agreement shall be resolved by the Court in accordance with the applicable statutes, guidelines, rules, and case law.
>
> 2. The [D]efendant agrees to plead guilty to Count 1 of the Indictment in the above-styled cause. The [D]efendant will pay the $100.00 special assessment prior to sentencing.
>
> 3. There is no agreement as to the appropriate criminal history of the defendant.
>
> 4. Should it be judged by the Government that the [D]efendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting[ ] obstructing or impeding justice within the meaning of United States Sentencing Guidelines Section 3C1.1 or has failed to make any court appearances in this case, from the date of the [D]efendant's signing of this plea agreement to the date of the [D]efendant's sentencing, or if the [D]efendant attempts to withdraw his/her plea, the Government will be released from its obligations and would become free to argue for any sentence within statutory limits. Such a breach by the

[D]efendant would not release the [D]efendant from this plea of guilty.

5.      Based on the Defendant's anticipated future assistance to the Government, it is contemplated that the Government may recommend to the Court a departure in the Defendant's sentence pursuant to U.S. Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e). This would be solely within the discretion of the Government and is not part of the plea agreement. Substantial assistance is understood by both parties to require good faith during all phases of the cooperation period, including the Defendant's provision of complete and truthful information which assists in the investigation or prosecution of other individuals and complete and truthful testimony at subsequent proceedings when needed. The Defendant acknowledges that the Government's determination of whether the Defendant has cooperated fully and provided substantial assistance, and the Government's assessment of the value, truthfulness and completeness of the Defendant's assistance, is solely within the judgment and discretion of the Government and shall be binding upon the Defendant.

6.      The parties agree that the Government will recommend the following: (1) that the Defendant receive a three-level reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1; (2) that the Defendant be sentenced at the lowest end of the applicable guideline range; and (3) that the amount of Cocaine attributable to the Defendant is at least 2 kilograms but less than 3.5 kilograms.

7.      The Defendant is aware that Title 18 United States Code, section 3742 affords him/her the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the [D]efendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The [D]efendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the [D]efendant's sentence pursuant to Section 3742(b), the [D]efendant shall be released from the above waiver of appellate rights. By signing this agreement, the [D]efendant acknowledges that he/she has discussed the appeal waiver set forth in this agreement with his/her attorney. The [D]efendant further agrees together with the United States, to request that the district court enter a specific finding that the [D]efendant's waiver of his/her right to appeal the sentence to be imposed in this case was knowing and voluntary.

8.    The [D]efendant understands and agrees that the Court will make the final determination of facts as to any sentence and as to any mitigating or aggravating factors concerning the sentence to be imposed. Adverse rulings by the Court shall not be grounds for the withdrawal of the Defendant's guilty plea or to appeal any sentence imposed. The Court is not limited to consideration of the facts and events provided by the Government.

9.    There are no other agreements between and among the parties to this agreement. The [D]efendant enters this agreement freely, knowingly, and voluntarily, and upon the advice of counsel.

(Cr. D.E. 133 at 1-4.)

On April 13, 2010, the Court sentenced Smith to one hundred forty months imprisonment, to be followed by a five-year term of supervised release. (Cr. D.E. 254.) The Court's judgment was entered on April 14, 2010 from which Smith did not appeal. (Cr. D.E. 255.)

On April 14, 2011, Defendant filed this § 2255 motion which the Court construes as alleging that the ineffective assistance of counsel caused his guilty plea to be involuntary. (D.E. 1 at 4, D.E. 27 at 2-4.) The motion did not contain any allegation that Smith requested his attorney to file an appeal.

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

"Defendants must assert their claims in the ordinary course of trial and direct appeal." <u>Grant v. United States</u>, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

<u>Id.</u>

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. <u>El-Nobani v. United States</u>, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); <u>Peveler v. United States</u>, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); <u>Phillip v. United States</u>, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." <u>Bousley</u>, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." <u>Id.</u> The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" <u>Valentine v. United States</u>,

488 F.3d 325, 333 (6th Cir. 2007) (quoting <u>Turner v. United States</u>, 183 F.3d 474, 477 (6th Cir. 1999)).  "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" <u>Valentine</u>, 488 F.3d at 333 (quoting <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999)).  Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case.  <u>Blanton v. United States</u>, 94 F.3d 227, 235 (6th Cir. 1996); <i>see also</i> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion.").  Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence.  <u>Pough v. United States</u>, 442 F.3d 959, 964 (6th Cir. 2006).

Smith contends that his guilty plea was involuntary because his attorney failed to advise him about his potential sentence exposure, specifically that he would receive a two-level increase for possession of firearms under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1), and that he would be subject to an enhancement as a career offender under U.S.S.G. § 4B1.1.  (D.E. 1 at 4, D.E. 27 at 2-4.)  The United States responds that the inmate offers no proof to support his allegation that he was not advised of the consequences of his pending charges.  (D.E. 26 at 9.)  The United States has provided the affidavit of Attorney Steve West, who states that he did advise Smith that he was a career offender, that they had discussions about limiting the drug quantity attributable to Defendant, and that he advised Smith that, by pleading guilty, the client could avoid the Government giving notice that the penalty would be increased from a minimum of ten years to life to a minimum of twenty years to life.  (D.E. 26-1 at 1-2.)

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a petitioner must demonstrate

that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [Strickland, 466 U.S.] at 689. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687." Harrington v. Richter, 131 S. Ct. 770, 787 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Strickland, 466 U.S.] at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id. at 687." Richter, 131 S. Ct. at 787-88; see also id. at 791-72 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

---

[1]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id.

> Strickland, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S. Ct. 2052; *see also* Bell v. Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S. Ct. 2052.

Richter, 131 S. Ct. at 788.

The two-part test stated in *Strickland* applies to challenges to guilty pleas based on the ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lockhart, 474 U.S. at 59; Padilla, 559 U.S. at 372 ("[T]o obtain relief on this type of claim, a [prisoner] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

The terms of Defendant's plea agreement are set forth above. By signing the agreement, he expressly acknowledged that, although he would receive a recommendation for a three-level reduction for acceptance of responsibility and a sentence at the lowest end of the applicable sentencing guideline range, those matters would be determined by the sentencing court. (Cr. D.E. 133 at 2-3.) Smith expressly acknowledged and waived his right to appeal. (Id. at 3.) The plea agreement explicitly stated that Defendant had "enter[ed] this agreement freely, knowingly, and voluntarily, upon the advice of counsel." (Id. at 4.)

During the change of plea hearing, the following exchanges took place between the Court, the attorneys, and Defendant:

| | |
|---|---|
| The Court: | Mr. Smith, the court understands that you wish to change your plea and enter a plea of guilty to count 1 of the indictment. Is that correct, sir? |
| Defendant: | Yes, Your Honor. |
| The Court: | Before accepting your plea I'm going to ask you a series of questions to determine if your plea is a valid one. Before doing that I'm goint to ask the clerk to place you under oath. |

(The defendant was placed under oath)

| | |
|---|---|
| The Court: | All right, would you state your name for the record, please, sir? |
| Defendant: | Jeffery Smith. |
| The Court: | Mr. Smith, as indicated, I'm going to be asking you some questions about your plea, and if there's anything I ask you that you do not understand or wish to consult with your attorney, Mr. West, would you let me know, sir? |
| Defendant: | Yes, sir. |
| The Court: | And would you mind telling me your age, please? |
| Defendant: | Twenty-six. |
| The Court: | And how far did you go in school? |
| Defendant: | I mean I'm 25. I ain't 26. I'm 25. |
| The Court: | All right, sir. And how far did you go in school? |
| Defendant: | Tenth grade. |
| The Court: | Before coming here today have you taken any type of medication or any type of drugs that would affect your understanding of these proceedings? |
| Defendant: | No, sir. |
| The Court: | Do you understand what we're doing here this morning? |
| Defendant: | Yes, sir. |
| The Court: | Have you had sufficient opportunity to discuss this matter with Mr. West? |
| Defendant: | Yes, sir. |
| The Court: | Are you satisfied with his advice and representation given to you in this case? |
| Defendant: | Yes, sir. |

| | |
|---|---|
| The Court: | All right. I want to go over with you a series of rights that you will be waiving or giving up by reason of your plea. Do you understand that under the Constitution and laws of the United States that you are entitled to a trial by a jury on the charges in the indictment? |
| Defendant: | Yes, sir. |
| The Court: | Do you also understand that at the trial of this case you would be presumed to be innocent of these charges, and the government would have to prove that you were guilty by competent evidence beyond a reasonable doubt? |
| Defendant: | Yes, sir. |
| The Court: | Do you also understand that at the trial of this case the government would have to - would have to put on witnesses here in this courtroom in your presence, and your attorney could cross-examine those government witnesses, could object to any evidence that the government offers, and could offer evidence on your behalf? |
| Defendant: | Yes, sir. |
| The Court: | Do you also understand that at the trial, you would have a right to testify as a witness if you wanted to do so; but you also would have a right not to testify; and if you decided not to testify, that could not be used against you in any way? |
| Defendant: | Yes, sir. |
| The Court: | And do you understand that if you plead guilty and I accept your plea, you'll be giving up your right to a trial and the other rights I've just gone over with you, and you'll also be giving up your right to appeal your conviction? Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | And finally, as I indicated, there would not be a trial based upon your plea, and I would then sentence you after considering what is called a presentence report, which I will go over with you in just a moment. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Having gone over those rights with you, Mr. Smith, is it still your intention to enter a plea of guilty to Count 1 of the indictment? |
| Defendant: | Yes, sir. |
| The Court: | Have you seen a copy of the indictment? |
| Defendant: | Yes, sir. |
| The Court: | Have you had a chance to read it over and discuss it with Mr. West? |

| | |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | Now I'm going to go over with you again the charges set forth in count 1, which states: Beginning at a time unknown to the grand jury but through at least on or about October 1, 2008, in the Western District of Tennessee, that you, along with the other persons named in that count, did unlawfully and intentionally conspire, combine, confederate and agree together and with other persons both known and unknown to the grand jury to commit the following offenses against the United States. And, Mr. Kitchen, it seems like we may have had a person before on this case. Should those numbers be 5, or are they still 50 in that conspiracy. |
| AUSA Kitchen: | In this conspiracy, Your Honor, it's 50. |
| The Court: | It's 50? All right. I was thinking there was something in another instance that we made an alteration, and I just wanted to make sure that's where we are. |
| AUSA Kitchen: | Yes, sir. |
| The Court: | Okay. All right, first of all, the first indication of - or the first violation that's alleged that the conspirators committed was to unlawfully, knowingly and intentionally possess with intent to distribute over 50 grams of cocaine base, also known as crack cocaine. |
| | (Attorney conference) |
| AUSA Kitchen: | I'm sorry, Judge. |
| The Court: | Go ahead. |
| | (Attorney conference) |
| AUSA Kitchen: | Thank you, Your Honor. I apologize. |
| The Court: | Are you ready to proceed? |
| AUSA Kitchen: | Yes, sir. |
| The Court: | A Schedule II controlled substance as classified by 21, United States Code, Section 812, this being in violation of 21 U.S.C., Section 841. And secondly, to unlawfully, knowingly, and intentionally distribute over 50 grams of cocaine base, again a Schedule II controlled substance, in violation of 21 United States Code, Section 841(a)(1). It's alleged that the object and purpose of the conspiracy was for defendants Mr. Wooten; Mr. Jones; you, Mr. Smith; Mr. Long; Mr. Cooper; and Mr. Brantley to obtain cocaine base and then to aid and abet each other in developing a market for and distributing the substance in the vicinity of Jackson, Madison County, Tennessee. It was further a part of the conspiracy to distribute the cocaine base and to collect the proceeds for the financial benefit and use of the co-conspirators. This all being in violation of 21, States Code, Section 846. Mr. Smith, do you understand what you're being charged with in that count, sir? |

| | |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | The potential penalty for a violation of that section is not less than 10 years in prison nor more than life, not more than a $4,000,000 fine, or both, and not less than 5 years supervised release; however, if it is determined that you've been previously convicted of a felony drug offense, then your potential penalty could be not less than 20 years in prison nor more than life, no more than an $8,000,000 fine, or both, and not less than 10 years supervised release, together with a mandatory special assessment of $100. Now, do you understand what the possible penalties are involved here, sir? |
| Defendant: | Yes, sir. |
| The Court: | And, again, I would remind you that this particular statute does carry, potentially, a mandatory minimum sentence of not less than 10 years or, if you have a prior felony drug offense, not less than 20 years in prison. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Now, Mr. Smith, do you understand that any sentence that you might receive in this case would be without what is called parole. Parole sometimes applies in state court convictions where someone is allowed to be released earlier from their term of imprisonment, but that does not apply here in federal court. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Now, with respect to the period of supervised release that I mentioned to you in describing the penalty aspect of this charge, do you understand that there would be a period of supervision by the probation office after your release from any type of jail time or incarceration that you might receive and that if you violated the conditions of your supervised release, that could result in your serving additional time in jail up to the length of that supervised release period. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Now, Mr. Smith, has anyone threatened you or tried to force you in any way to plead guilty to this charge? |
| Defendant: | No, sir. |
| The Court: | All right. Now there's been a document provided to the court entitled "Plea Agreement." It's a four-page document which appears to have your signature on the last page. I'm going to hand the plea agreement back to you and ask if that is, in fact, your signature on the plea agreement, sir. |
| Defendant: | Yes, sir. |
| The Court: | And did you enter into that agreement freely and voluntarily? |

| | |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | All right, I'm going to call upon Mr. Jerry Kitchen, who represents the government in this case, to go over with you in summary the terms of the plea agreement. Please listen to what he has to say. I'll be asking you some questions about that. Mr. Kitchen. |

. . .

| | |
|---|---|
| The Court: | Mr. Smith, is this your understanding as to the terms of the plea agreement you have with the government, sir? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right. Mr. Smith, the court has not, obviously, seen the presentence report, as I mentioned to you, and until I've had the opportunity to review that, I will not be making a determination about whether the court will accept the plea agreement. But if for some reason the court does not follow some recommendation in the plea agreement, that's not going to permit you to withdraw your plea at a later date. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Now, I'm sure that you and Mr. West have discussed in a general way the application of the United States Sentencing Guidelines to your case. Those guidelines are now advisory but otherwise still apply, or at least the court's directed to consider those guidelines in determining the appropriate sentence in this case. However, the court is also not only to consider the advisory guidelines but also other factors under 18, United States Code, Section 3553(a), that Congress has established in determining what the appropriate sentence might be in any given criminal case here in this court. And I also mentioned to you about a presentence report that the probation office will be preparing. A copy of that document will be given to myself; to Mr. West, your attorney; and to Mr. Kitchen. Mr. West will have the opportunity to review it with you and to file any position papers - or objections that you might have to that report. It will contain information about the charges in the indictment, about any prior criminal record you may have, as well as information such as your family history, medical history, employment history, things of that nature. It may also make a recommendation to the court regarding a sentence in this case, although that information will only be seen by me and not shared either with your attorney or with the government's attorney. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Now, Mr. Smith, Mr. Kitchen, on behalf of the government, made mention in the presentence report - I mean in the plea agreement, rather, about the possibility of the government making a motion under Section 5K1.1 of the sentencing guidelines, sometimes referred to as a substantial assistance motion, which would, if granted, permit the court to reduce the sentence based upon that assistance. Now, I simply want to remind you that it is solely up to the |

14

|  |  |
|---|---|
| | government to decide whether or not to file such a motion. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | And if the government does file the motion, it would be up to the court to decide whether or not to grant that motion. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | And finally, if the court does grant the motion, it would be up to the judge, it would be up to me, to decide to what extent to reduce your sentence based upon that assistance. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | Now, Mr. Smith, the court has advised you that you would be giving up your right to appeal your conviction, that is, a finding of guilty, if you do plead guilty to this charge. Now, as I understand it from the plea agreement, if the court accepts that agreement, that you have agreed to waive your right to appeal any dispute about your sentence unless the court goes above the statutory maximum in this case; or once the court determines what the advisory guideline range reflects, the court goes beyond that; or if the government appealed your sentence, then you would have the right to appeal your sentence. Is that your understanding, sir? |
| Defendant: | Yes, sir. |
| The Court: | Otherwise, if you did not agree to this, you would have the right to appeal your sentence if you disagreed with the court. Do you understand that, sir? |
| Defendant: | Yes, sir. |
| The Court: | And are you giving up that right freely and voluntarily, sir? |
| Defendant: | Yes, sir. |
| The Court: | All right. Now, Mr. Smith, the Court has indicated to you about the advisory guidelines, and I'm sure that you and Mr. West have discussed those. But other than those conversations you may have had with Mr. West about how the advisory guidelines might apply to your case, has anyone made a promise or a prediction to you about what your sentence would be if you plead guilty to this charge? |
| Defendant: | No, sir. |
| The Court: | All right, I'm going to call on Mr. Kitchen again to go over with you in summary form the proof that would have been presented had this matter proceeded to trial. Please, again, listen carefully to what he has to say. I'll be asking you some questions about that as well. Mr. Kitchen. |

AUSA Kitchen: Thank you, Your Honor. Your Honor, had this matter gone to trial the government would have presented proof to show that on October 1, 2008, officers with the Jackson police department special operations unit executed a search warrant at 205 Jackson Street in the upstairs apartment. When officers made entry into the residence there, three of the defendants that were located in this multiple-defendant case, Karriem Wooten; this defendant, Jeffery Smith; and a Gersaidrick Long, jumped from a second-story window and attempted to flee. Mr. Smith was apprehended and taken into custody in the backyard of the house west of the location. The other two defendants were also apprehended a short distance away. Pursuant to the search, officers recovered throughout the residence there bags of crack cocaine, powder cocaine and marijuana, as well as items associated with the distribution of narcotics and the manufacturing of powder cocaine into crack cocaine. Also, other defendants were also present that were indicted in this case. Misters Long, Cooper, and Brantley, as I indicated, they were also taken into custody. That would have been substantially the facts that would have been presented had this matter gone to trial. The narcotics were presented to the TBI lab for testing and did test positive for the controlled substances. As I stated previously, I believe this defendant and others - the amount of relevant conduct that we indicated were from statements taken other than from this defendant about amounts of controlled substances that have been involved in this conspiracy.

The Court: And what is being attributed to this gentleman as far as part of the conspiracy?

AUSA Kitchen: Your Honor, there was over 50 grams of crack cocaine that was recovered during this search; and other co-conspirators and other individuals involved have attributed to this defendant, as I indicated in the plea agreement, less than 3.5 grams of powder cocaine, total. So we're not saying that any more would be attributed to the defendant. It looks like this will be a mandatory minimum case on the defendant. And based upon his other involvement, that we're not alleging anything more than 50 grams of crack other than what we've alleged in the plea agreement.

The Court: Now, you said grams. You meant kilograms?

AUSA Kitchen: Other than the kilograms, yes, sir.

The Court: Yes, sir. All right. Mr. Smith, is the information provided by the government's representative as far as your involvement in this matter is concerned, is that basically correct, sir?

Defendant: Can I talk to Mr. West a second, Your Honor?

The Court: Yes, sir. Go right ahead.

(Attorney/client conference)

16

| | |
|---|---|
| Attorney West: | Your Honor, again - and I understand because I have trouble with conversion tables myself. What I believe I understand Mr. Kitchen to be saying is the 3.5 kilograms is a converted figure based on the conversion table having to do with all the different types of drugs recovered. |
| The Court: | Is it a marijuana equivalent? Is that what we're talking about? |
| AUSA Kitchen: | Yes, sir. Well, of course, that was after speaking with the officers based upon the amounts that other individuals would have attributed to the defendant of powder cocaine because that's what information we were receiving that the defendant was attributed to of powder cocaine. The crack cocaine that was recovered, of course, is why he's looking at a mandatory minimum. So that's the amount that we would say would be attributed to him. |
| The Court: | But you're saying as far as the relevant conduct, it's the powder cocaine that - |
| AUSA Kitchen: | Correct. |
| The Court: | - the two point - Let me see. At least 2 but not more than 3.5 kilograms. Is that what you're saying? |
| AUSA Kitchen: | Yes, sir. |
| The Court: | Does that answer your question? |
| Attorney West: | That's what I understood it to be. (To the defendant) Do you understand it now? |
| Defendant: | Yes, sir. |
| The Court: | All right, Mr. Smith, do you understand that, sir? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right, sir. Again, with that clarification or that explanation, do you agree with the facts as set forth as far as your involvement in this matter is concerned? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right Mr. Smith, the court has advised you of your right to a trial and your other rights in connection with this matter. The court finds there is an independent basis in fact for your plea, and I'm going to again ask you if you are in fact pleading guilty to Count 1 of the indictment. Are you, sir? |
| Defendant: | Yes, Your Honor. |

| | |
|---|---|
| The Court: | And are you pleading guilty to that count because you're in fact guilty of that count, sir? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right, the court finds that you are freely and voluntarily pleading guilty. Having acknowledged your guilt, I'm going to accept your plea and enter a judgment of guilty based upon that plea. And when will this be set for sentencing, please ma'am? |
| The Clerk: | Thursday, September 24, 2009, at nine o'clock. |
| The Court: | Is that date all right with you, Mr. West? |
| Attorney West: | Your Honor, do you have - I don't want to impose upon the court, but do you have any date besides a Thursday that would be just as convenient for the court? |
| The Court: | We ought to be able to find something. |
| The Clerk: | Friday the 25th at 1:30? |
| Attorney West: | If that would suit the court. |
| The Court: | Yes, sir. If she tells me I've got it, I've got it. |
| Attorney West: | All right, sir. |
| The Court: | Mr. Kitchen, is that all right with you, sir? |
| AUSA Kitchen: | Yes sir. |
| The Court: | All right, Mr. Smith, that will be the date of your sentencing, sir. Do you have any questions about what the court's been over with you this morning? |
| Defendant: | No, sir. |

(D.E. 14 at 2-22.)

In evaluating the validity of Smith's collateral challenge to his guilty plea under § 2255, the Court must determine that he knowingly, intelligently, and voluntarily entered his plea of guilty. Based on the plea colloquy and the applicable law, Defendant knowingly, intelligently, and voluntarily entered a plea of guilty. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. at 56 (quoting North Carolina v. Alford, 400 U.S.

25, 31 (1970)). He acknowledged in open court, under oath, that he understood the consequences of his guilty plea.

The Court described the elements of his offense and the Assistant United States Attorney related Defendant's underlying conduct in the drug conspiracy. (D.E. 14 at 17-19.) The inmate responded that he understood the charged crime and was pleading guilty because he was guilty of the offense conduct. (Id. at 20.) Defendant testified that he had signed and understood the plea agreement. (Id. at 10, 13.) He was advised of his right to proceed to trial and assert his alleged innocence. (Id. at 4-5.) By entering the guilty plea he received the benefit of a three-level reduction for acceptance of responsibility, a recommendation of a sentence at the low-end of the applicable guidelines range, and the possibility of a motion under Section 5K1.1 of the sentencing guidelines. (Cr. D.E. 133 at 1-4.)

The fact that a defendant, at the time he enters his guilty plea, does not know the precise sentence he will receive does not mean that the plea was "unknowing." United States v. Stephens, 906 F.2d 251, 254 (6th Cir. 1990). A defendant's subjective hope of a lesser sentence is unavailing. "Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." United States v. Crusco, 536 F.2d 21, 24 (3rd Cir. 1976). Smith was specifically advised in open court of the minimum and maximum penalties and the applicability of the sentencing guidelines. (D.E. 14 at 8-9, 13-14.) The Court related to Defendant that the mandatory minimum sentence if he "ha[d] a prior felony drug offense, [was] not less than 20 years in prison." (Id. at 9.) Smith indicated that he understood the Court's explanation. (Id. at 9, 14.)

Although Defendant claims that his attorney was "ineffective" and that therefore his plea was not "voluntary", the Sixth Circuit Court of Appeals held in Ramos v. Rogers, 170 F.3d 560, 561 (6th Cir. 1999), that "the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea." See also Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986) (a "defendant's plea agreement consists of the terms revealed in open court"). "Entry of a plea

of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." United States v. Loutos, 383 F.3d 615, 619 (7th Cir. 2004) (quoting United States v. Stewart, 198 F.3d 984, 987 (7th Cir. 1999)); *see also* United States v. Gwiazdzinski, 141 F.3d 784, 788 (7th Cir. 1998)("[t]he purpose of the Rule 11 colloquy is to expose coercion, and the district judge must be able to rely on the defendant's sworn testimony at that hearing."). A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. 63, 74.

> The United States Supreme Court has held that
>
> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

By voluntarily pleading guilty, Smith admitted the factual basis for the prosecution's case against him. He cannot now "invalidate" his guilty plea by making a self-serving claim that his counsel was ineffective, particularly when the record shows he was fully and painstakingly informed in open court about the consequences of his plea and fully admitted that the United States' factual basis was true and correct.

By admitting guilt, Defendant received the full three-point reduction for acceptance of responsibility, reducing his total offense level from thirty-four to thirty-one. (D.E. 14 at 8.) Because Smith committed this offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense, pursuant to U.S.S.G. § 4KB1.1, he was a career offender and his total offense level was computed to be 34.[2] (Id.) His resulting guideline range for the

---

[2]Under the terms of the plea agreement, the United States would recommend the amount of cocaine attributed to Defendant was at least 2 kilograms but less than 3.5 kilograms which corresponded with a base offense level of 28. With a three-level reduction for acceptance of responsibility, the defendant's offense level would have been 25; however, because the career offender adjustment applied,

(continued...)

conviction was 262 to 327 months imprisonment. (D.E. 14 at 9.) The Court granted the United States'

oral motion pursuant to U.S.S.G. § 5K1.1 and imposed a sentence of 140 months imprisonment. (Id.

at 11-12.) Defendant has set forth no facts or allegations which provide a basis for contradicting his

own sworn testimony.

After reviewing the pre-sentence report, the inmate expressed displeasure that his status as a

career offender would prevent him from receiving the base offense level for at least 2 kilograms but

less than 3.5 kilograms of cocaine provided by the plea agreement. (Cr. D.E. 156.) Smith requested

and received new counsel, Jon York. (D.E. 19.) He does not allege that he requested York to assist

him in withdrawing his guilty plea. The evidence of Smith's guilt was overwhelming. He entered a

knowing and voluntary guilty plea. Defendant has failed to establish that he would have not pled

guilty in this case had counsel taken any different action. Had Defendant gone to trial there would

have been no agreement on the drug quantity attributable to him, the career offender enhancement

would still have applied to his sentence, and the United States would not have made a motion pursuant

to U.S.S.G. § 5K1.1. This motion to vacate is without merit and is DENIED.

The motion, together with the files and record in this case "conclusively show that the prisoner

is entitled to no relief." 28 U.S.C. § 2255. Judgment shall be entered for the United States.

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its

decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473 (2000), the United States Supreme Court stated that § 2253

is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which

requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were 'adequate

---

[2](...continued)
the statutory and guideline calculations would remain the same.

to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of COAs:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor."

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893 n.4). Thus,

> [a] prisoner seeking a COA must prove "something more than the absence of frivolity" or the existence of mere "good faith" on his or her part. We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); *see also* Id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[3]

In this case, for the reasons previously stated, the motion to vacate lacks substantive merit. Therefore, Defendant cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking

---

[3]The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Miller-El, 537 U.S. at 337. Instead, the COA requirement implements a system of "differential treatment for those appeals deserving of attention from those that plainly do not." Id.

pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

IT IS SO ORDERED this 26th day of June, 2014.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE